**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**
_____

HAIBO JIANG,

              Plaintiff,

                         15-CV-898-A
     v.                          **DECISION AND ORDER**

TOWN OF TONAWANDA,

              Defendant.
_____

The Court assumes familiarity with the facts and procedural history of this case. Before the Court is the Plaintiff's response to an order the Court issued pursuant to Federal Rule of Civil Procedure 56(f)(3).[1] In that order, the Court directed the Plaintiff to show cause why judgment should not be entered for the Defendant on the Plaintiff's first and second causes of action.[2] Those claims allege violations of, respectively, 42 U.S.C. § 1981 and the Plaintiff's First Amendment right to association.

**DISCUSSION**

**1. The Plaintiff's 42 U.S.C. § 1981 claim**

The Plaintiff's first cause of action alleges that the Defendant—a municipality—violated 42 U.S.C. § 1981. In *Jett v. Dallas Independent School District*, 491 U.S. 701

---

[1] Rule 56(f) codifies the "well-established" "power" of a court "to enter summary judgment sua sponte," so long as the court provides "notice and a reasonable time to respond." 10A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2720.1, at 356-57 (4th ed. 2016). Employing Rule 56(f) makes good sense in this case: if the Court did not do so, it would (1) have to instruct the jury on causes of action that possibly have no legal merit; and/or (2) resolve these same issues in the context of post-trial motions. Thus, addressing these issues now will help streamline the trial and any post-trial proceedings. *See id.* at 357 ("To conclude" that a court does not have authority to *sua sponte* grant summary judgment "would be inconsistent with the objective of Rule 56 of expediting the resolution of cases.")

[2] Motions *in limine* from both parties are also pending. The Court will resolve those motions in due course.

1

(1989), however, the Supreme Court held that "the express cause of action for damages created by [42 U.S.C.] § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Id.* at 733. In light of *Jett*, the Court directed the Plaintiff to address why, pursuant to Rule 56(f)(3), the Court should not enter judgment for the Defendant as to the Plaintiff's § 1981 claim.

After the Court issued its Rule 56(f) order, the Second Circuit decided *Duplan v. City of New York*, 888 F.3d 612, 2018 WL 1996613 (2d Cir. 2018). In *Duplan*, the Second Circuit joined nine other courts of appeals "in concluding that § 1981 does not provide a separate private right of action against state actors." *Id.* at *5. In reaching that conclusion, the Second Circuit rejected the reasoning of *Federation of African American Contractors v. City of Oakland*, 96 F.3d 1204 (9th Cir. 1996), a case on which the Plaintiff relied in his Rule 56(f) submission. The Court therefore directed the Plaintiff to address the relevance of *Duplan* to his first cause of action.

The Plaintiff responds that, even after *Duplan*, § 1983 "constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Jett*, 491 U.S. at 733. This is correct, but it avoids answering the question *Duplan* decided: Whether § 1981 creates a private right of action against a state actor. *See McGovern v. City of Philadelphia*, 554 F.3d 114, 119 (3d Cir. 2009) ("The mere mention of 'rights' does not, without more, establish a private right of action.") *See also Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("Like substantive federal law itself, private rights of action to enforce a federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy.") (citation omitted).

2

Perhaps recognizing this, the Plaintiff argues that, in light of *Duplan*, his § 1981 claim "should be construed as a cause of action for damages for Defendant's violation of Plaintiff's substantive rights under § 1981." Docket No. 43 at 3. The Court construes this request as a motion to amend the complaint to seek relief under § 1983 for a violation of § 1981. The Defendant shall respond to this request on or before May 24, 2018. The Court is mindful that, at least in the context of a § 1983 claim alleging a constitutional violation, a plaintiff does not need "to invoke § 1983 expressly in order to state a claim." *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014) (per curiam). Thus, if the Defendant opposes the Plaintiff's motion, the Defendant's response should address (in addition to whatever arguments the Defendant wishes to raise) how, if at all, it would be prejudiced by the Plaintiff's requested amendment.

**2. The Plaintiff's First Amendment claim**

The Plaintiff's second cause of action is brought under § 1983 and alleges that the Defendant violated his First Amendment right to association. Specifically, the complaint alleges that the Plaintiff has a "fundamental constitutional right to freedom of association, particularly with respect to his customers' race and national origin." Complaint ¶ 17.

The text of the First Amendment "does not . . . protect a 'right of association,'" but the Supreme Court has "recognized that [the Amendment] embraces such a right in certain circumstances." *City of Dallas v. Stanglin*, 490 U.S. 19, 23-24 (1989). Specifically, the First Amendment protects "two different sorts of 'freedom of association,'" *id.* at 24: (1) the freedom "to enter into and maintain certain intimate human relationships," such as "those that attend the creation and sustenance of a family," *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-20 (1984); and (2) the freedom "to associate for the purpose of engaging

3

in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Id.* at 618.

In light of this case law, the Court directed the Plaintiff to address why, pursuant to Rule 56(f)(3), the Court "should not enter judgment [for the Defendant] on Count 2 . . . given that . . . based on the exhibits and witnesses identified in the Plaintiff's exhibit and witness lists (Docket No. 28-4), it does not appear that the Plaintiff will offer any evidence from which a reasonable jury could conclude that he associated with his customers in a way that is protected by the First Amendment." Docket No. 36.

The Court's invocation of Rule 56(f) "automatically trigger[ed] the regular [summary judgment] procedure" found in Rule 56(c). 2010 Advisory Committee Note to Rule 56(f). The Plaintiff must therefore show that there is, in fact, a genuinely disputed question of fact as to whether he and his customers engaged in First Amendment-protected association. This means the Plaintiff must either (1) "cit[e] to particular parts of materials in the record," or (2) "show[] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

In response to the Plaintiff's Rule 56(f) Order, the Plaintiff does not point to record material showing that there is a genuine factual dispute, nor does he argue that the "materials cited do not establish the absence . . . of a genuine dispute." *Id.* The Plaintiff instead argues that the case that appears to most clearly bar his First Amendment claim—*City of Dallas v. Stanglin*, 490 U.S. 19 (1989)—"does not foreclose on the application of First Amendment freedom of association here." Docket No. 41 at 4. The Plaintiff correctly observes that "[t]he dispositive question in [*Stanglin*] [was] the level of judicial 'scrutiny' to be applied" to the municipal ordinance at issue in that case. 490 U.S. at 23. But to

4

answer that question, the Supreme Court had to first decide whether the dance hall patrons in *Stanglin* had a constitutional right to associate; the answer to that question, of course, informed the level of scrutiny the Court would apply to the ordinance at issue. The Plaintiff's attempt to narrowly read *Stanglin* is, therefore, unavailing.

The Plaintiff next argues that this case differs from *Stanglin* because, in *Stanglin*, the "associating people . . . were minors prohibited from associating with adults," but that in this case, "the association is between a merchant and his African-American customers." Docket No. 41 at 4. This is certainly true, but it sidesteps the question raised in the Court's Rule 56(f) order—whether the Plaintiff has any cognizable First Amendment freedom-of-association claim—by conflating a freedom-of-association claim with a claim that might be protected by other constitutional provisions.

As interpreted by the Supreme Court, the First Amendment's right to association does not include a right to associate with people of another race simply for the sake of associating with people of another race. The Plaintiff cites no authority for this proposition, and the Court has found none. Instead, the limited authority on this question is to the contrary.[3] And the cases that discuss conduct similar to that alleged in the complaint provide the Plaintiff with no First Amendment protection: "[C]oming together to engage in recreational dancing . . . is not protected" as a form of expressive conduct

---

[3] *See Lewis v. Ascension Parish Sch. Bd.*, Civil Action No. 08-193-C-M2, 2009 WL 10681443, at *16 (M.D. La. Aug. 5, 2009) ("The plaintiff's claim . . . that his children have been denied the opportunity to associate with children of all races and socio-economic backgrounds does not fall within either of the . . . categories of protection designated by the Supreme Court. Thus, such claim should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6)."), *aff'd in part and rev'd in part on other grounds*, 662 F.3d 343, 346 n.5 (5th Cir. 2011); *Contreras v. City of Chicago*, 920 F. Supp. 1370, 1388 (N.D. Ill. 1996) ("[C]ontrary to plaintiff's suggestion, the fact that the parties to a social conversation happen to share the same national origin or ancestry does not transform the conversation into an 'intimate association' nor does it, in and of itself, transform the contents of the conversation into expressive association that is entitled to protection; the reach of First Amendment protection is not determined by the race or national origin of the speaker."), *aff'd on other grounds*, 119 F.3d 1286, 1219 n.1 (7th Cir. 1997).

under the First Amendment.  *Stanglin*, 490 U.S. at 25.  Similarly, "[g]athering with others for a purely social and recreational activity . . . does not constitute expressive association under the First Amendment."  *New York State Rifle & Pistol Ass'n, Inc. v. City of New York*, 883 F.3d 45, 67-68 (2d Cir. 2018) (citation omitted).  And, finally, the First Amendment right to association "generally will not apply . . . to business relationships." *Sanitation & Recycling Industr., Inc. v. City of New York*, 107 F.3d 985, 996 (2d Cir. 1997). Rather, the First Amendment's right to associate protects only the two types of association described above.

The Plaintiff has identified no evidence suggesting that he engaged in "intimate human relationships" with his customers, nor does he point to anything that might suggest that he and his customers engaged in First Amendment-protected conduct when they gathered at his restaurant.  The fact that the people with whom the Plaintiff associated were of a different race than he is does not transform their otherwise-unprotected conduct into something protected by the First Amendment.

Because the Plaintiff has not shown that there is a genuine dispute of material fact over whether he and his customers associated with each other in a manner protected by the First Amendment, the Court grants summary judgment for the Defendant on the Plaintiff's second cause of action.

## CONCLUSION

For the reasons stated above, Court grants summary judgment for the Defendant on the Plaintiff's second cause of action.  Because this Decision and Order "adjudicates fewer than all the claims," the Clerk of Court shall not, at this time, enter judgment on the Plaintiff's second cause of action.  Fed. R. Civ. P. 54(b).

Further, the Defendant shall respond to the Plaintiff's motion to amend his first cause of action on or before May 24, 2018.

**SO ORDERED.**


Dated: May 17, 2018                     _s/Richard J. Arcara_
     Buffalo, New York               HONORABLE RICHARD J. ARCARA
                                            UNITED STATES DISTRICT JUDGE