**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**
_____

HAIBO JIANG,

                Plaintiff,

                                                    15-CV-898-A
    v.                                         **DECISION AND ORDER**

TOWN OF TONAWANDA,

                Defendant.
_____

This Decision and Order resolves several pending motions *in limine*. The Court will hear oral argument on the parties' remaining motions on May 31, 2018 at 11:00 a.m.

**1. The Plaintiff's motion to preclude the Defendant from offering any evidence**

The Plaintiff first moves, pursuant to Federal Rule of Civil Procedure 37(c), to preclude the Defendant from offering any evidence because, the Plaintiff argues, the Defendant failed to timely serve its initial disclosures. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness . . . at a trial, unless the failure was substantially justified or harmless.") In support of his motion, the Plaintiff argues that he received "a packet of documents purporting to be Defendant's Initial Disclosures" on November 27, 2017, the day before pre-trial submissions were due.

In response, the Defendant asserts that it timely served its initial disclosures on April 18, 2016, and that the Plaintiff's motion to preclude was based on the "apparently . . . mistaken impression that the initial disclosure was never served when he filed the motion." Docket No. 40 at 2. The Defendant has filed a copy of the cover letter for its

1

April 18, 2016 initial disclosures (Docket No. 40-1), and the Plaintiff has not disputed the Defendant's assertion that initial disclosures were, in fact, made.

The Plaintiff's motion to preclude under Rule 37(c) is, therefore, denied as moot.[1]

**2. The Plaintiff's motion for an adverse inference**

The Plaintiff next moves for the Court to instruct the jury that it may draw an adverse inference from the Defendant's alleged failure to "proffer Initial Disclosures," as well as its alleged failure to "respond to Plaintiff's outstanding discovery demands." Docket No. 28-1 at 3. The Plaintiff argues that "[m]uch of the discovery demanded . . . should be very relevant to [his] allegations." *Id.* at 3-4.

The Plaintiff's motion is denied because the Plaintiff did not move to compel the Defendant to comply with any of his discovery demands.[2] *See Ford v. Potter*, 354 F. App'x 28, 33 (5th Cir. 20039) (district court did not abuse discretion in denying motion for adverse inference where, among other things, plaintiff did not file a motion to compel); *Kocsis v. Cnty. of Sedgwick*, Civil Action No. 14-2167-CM, 2016 WL 1255593, at *2 (D. Kan. Mar. 29, 2016) (denying motion for adverse inference where "Plaintiff did not move to compel any discovery, and defendants state that they produced all relevant reports after a reasonable search"); *Lyttle v. Riley*, Civil Action No. 10-CV-14142, 2011 WL

---

[1] The Defendant represents that the Plaintiff has withdrawn his Rule 37(c) motion "to the extent that it seeks preclusion of anything provided within the defendant's initial disclosures." Docket No. 40 at 3. The Defendant suggests that the Plaintiff may not have withdrawn his Rule 37(c) motion "to the extent [he] seek[s] anything other than preclusion of materials contained in the initial disclosures." *Id.* The only basis for the Plaintiff's motion, however, was a failure to serve initial disclosures. *See* Docket No. 28-1 at 2 ("Defendant has not made timely Initial Disclosures.") Thus, when he withdrew his Rule 37(c) motion, the Plaintiff could not have reserved the right to seek exclusion of any other evidence under Rule 37(c).

[2] The Defendant represents (and the Plaintiff does not dispute) that the Defendant did, in fact, produce information in discovery, but that it withheld certain materials "because they included information regarding criminal prosecutions of non-parties." Docket No. 40 at 2. The Defendant states that it "invited plaintiff's counsel to obtain a court order so that defendant could disclose those materials." Docket No. 40 at 2.

7415429, at *3 (E.D. Mich. Dec. 21, 2011) (denying request for adverse inference where "Plaintiff did not file a motion to compel discovery or a motion for sanctions for spoliation").

### 3. The Plaintiff's motion to preclude the Defendant from offering evidence of the Plaintiff's criminal nuisance conviction

The Plaintiff moves to preclude the Defendant from impeaching him with his misdemeanor conviction for criminal nuisance in the second degree. *See* N.Y. Penal Law § 240.45. The Plaintiff correctly observes that the Federal Rules of Evidence prevent the Defendant from impeaching the Plaintiff with this conviction because the conviction is (1) a misdemeanor, and (2) does not involve "a dishonest act or false statement." Fed. R. Evid. 609(a)(2).[3]

It does not follow, however, that evidence of the Plaintiff's criminal nuisance conviction is categorically inadmissible. In the event that the Plaintiff suggests at trial— through his own testimony, or in some other manner—that the criminal nuisance charges against him were in some way unfounded, the Defendant would not be precluded, either in its cross-examination of the Plaintiff or in its own case, from introducing evidence that the Plaintiff was convicted of criminal nuisance to rebut the Plaintiff's claim.

---

[3] The Defendant argues that the Plaintiff's criminal nuisance conviction involves dishonesty or a false statement because "[t]he fact that plaintiff was charged with and convicted of placing the public's health and safety at risk on five separate occasions more than suggests dishonesty." Docket No. 40 at 10. The Defendant's argument stretches Rule 609(a)(2) too far. Rule 609(a)(2) covers crimes "such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of *crimen falsi*." 1974 Advisory Committee Note to Rule 609. A conviction for second-degree criminal nuisance under New York law does not fall into this category of crimes. And while the Court may "look[] beyond the elements of the offense" to decide whether it falls within the coverage of Rule 609(a)(2), *United States v. Estrada*, 430 F.3d 606, 614 (2d Cir. 2005), none of the facts underlying the Plaintiff's conviction—as the Court currently understands them—appears to involve dishonesty or fraud. Similarly, the Defendant argues that the Plaintiff's "incredulous allegation that the prosecutions [for criminal nuisance] were 'unwarranted fabrications,' demonstrates a propensity for dishonesty." *Id.* The Defendant, however, offers no authority for the proposition that a post-conviction statement made by a criminal defendant's attorney falls within the ambit of Rule 609.

3

### 4. The Defendant's motion to preclude "[p]rejudicial, inflammatory statements"

The Defendant moves to preclude the Plaintiff from offering testimony that a Town of Tonawanda police officer said: "Fuck Jim, the niggers are all over the place!" and "You fucking chink, you always bring the shitty people here!" The Defendant argues that these statements should be precluded under Federal Rule of Evidence 403.

"[A] plaintiff pursuing a claimed violation of [42 U.S.C.] § 1981 or denial of equal protection under [42 U.S.C.] § 1983 must show that the [alleged] discrimination was intentional." *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 226 (2d Cir. 2004) (citations omitted). The statements identified above are highly relevant to the issue of intent. "Racial slurs represent the conscious evocation of those stereotypical assumptions that once laid claim to the sanction of our laws. Such language is symbolic of the very attitudes that the civil rights states are intended to eradicate." *Mullen v. Princess Anne Volunteer Fire Co., Inc.*, 853 F.2d 1130, 113 (4th Cir. 1988). It is for that reason that "[r]acial slurs" are "clearly relevant" to determining whether a decision was made with discriminatory intent. *Id.*

Although the epithets identified above are unquestionably distasteful and abhorrent, their prejudicial value does not "substantially outweigh[]" their strong probative value. Fed. R. Evid. 403. It is, of course, difficult to prove intent without circumstantial evidence. *See United States v. Salameh*, 152 F.3d 88, 143 (2d Cir. 1998) ("[A]s a general rule most evidence of intent is circumstantial.") This fact underpins the Court's Rule 403 analysis, because the probative value of a particular piece of evidence "may be calculated by comparing evidentiary alternatives." *Old Chief v. United States*, 519 U.S. 172, 184

(1997).  *See also id.* at 184-85 ("[T]he [Advisory Committee Notes] leave no question that when Rule 403 confers discretion by providing that evidence 'may' be excluded, the discretionary judgment may be informed not only by assessing an evidentiary item's twin tendencies, but by placing the result of that assessment alongside similar assessments of evidentiary alternatives."); *United States v. Awadallah*, 436 F.3d 125, 132 (2d Cir. 2006) ("Probative value is also informed by the availability of alternative means to present similar evidence.")  Put differently, when there are few ways of proving an element of a claim, any evidence that tends to prove that element necessarily has more probative value than it otherwise might.  *See Mullen*, 853 F.2d at 1134 (noting that evidence of racial epithets "may be the only way in which discriminatory attitudes are revealed, for statements of racial animosity may remain absent from official channels, only to emerge in a more colloquial context").

There is, therefore, no basis to the Defendant's argument that the statements identified above should be precluded under Rule 403.  The statements are therefore admissible provided that they are otherwise admissible under the Rules of Evidence.

The Court is conscious of the fact that some jurors may be inflamed by racial epithets.  Thus, at the Defendant's request, the Court will provide the jury with a cautionary instruction—either during trial or in the Court's final charge—that any racial epithets the jurors hear during trial are "only to be considered on the question of discriminatory intent."  *Id.*  If the Defendant requests such an instruction, it shall provide a proposed instruction to the Court and the Plaintiff by no later than 9:00 a.m. on June 4, 2018.

5

### 5. The Defendant's motion to preclude hearsay statements

The Defendant moves to preclude testimony from Dajeen Robinson because, the Defendant argues, parts of Mr. Robinson's anticipated testimony contain two levels of inadmissible hearsay. The Defendant's motion is denied as moot because the Plaintiff's exhibit list (Docket No. 49) does not list Mr. Robinson as a potential witness for the Plaintiff.

### CONCLUSION

The parties' motions *in limine* are resolved as set forth above. The Court will hear oral argument on the parties' remaining motions on May 31, 2018 at 11:00 a.m.

**SO ORDERED.**


Dated: May 31, 2018                            __*s/Richard J. Arcara*_____
   Buffalo, New York                   HONORABLE RICHARD J. ARCARA
                                                   UNITED STATES DISTRICT JUDGE