**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**
_____

HAIBO JIANG,

                Plaintiff,

                                            15-CV-898-A
      v.                                         **DECISION AND ORDER**

TOWN OF TONAWANDA,

                Defendant.
_____

This Decision and Order provides reasons for the Court's rulings on several of the parties' motions *in limine*.[1] The Court assumes familiarity with the facts and arguments underlying each motion.

    **1.     The Plaintiff's motion to amend**

Federal Rule of Civil Procedure 15(a)(2) provides that, as applicable here, a party "may amend its pleading only with . . . the court's leave. The court should freely give leave when justice so requires." It is well settled that this is a "permissive standard," intended to promote the "strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (quotation marks omitted). Among the grounds to deny leave to amend are "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

---

[1] To ensure that trial could proceed as scheduled, the Court issued a text order (Docket No. 51) stating the Court's rulings on the parties' motions *in limine* and noting that, "[i]n due course," the Court would "file a written decision with the reasons for each of [its] rulings." Docket No. 51.

1

The Plaintiff's motion to amend was granted for two reasons. First, the Defendant did not assert that it would be prejudiced by the Plaintiff's proposed amendment. Indeed, the Defendant could not have made this argument, because the Plaintiff's proposed amendment did not change the substance of his § 1981 claim; instead, it only changed the vehicle through which the Plaintiff asserted his claim. In other words, instead of asserting a free-standing § 1981 claim, the Plaintiff's proposed amended asserted, through a § 1983 claim, that the Defendant violated his rights under § 1981. The Plaintiff's proof for his amended claim was almost certainly identical to the proof for his original claim.

Second, the Plaintiff's eve-of-trial motion to amend was not made in bad faith, nor was it the result of dilatory conduct. Until April 30, 2018—one month before trial—the Second Circuit had not confirmed that § 1981 does not create a private right of action against a state actor. *See Duplan v. City of New York*, 888 F.3d 612 (2d Cir. 2018). Although there was a lopsided circuit split before the Second Circuit issued its decision, the Plaintiff could not be faulted for urging the Court, before *Duplan*, to follow the Ninth Circuit's reasoning in *Federation of African American Contractors v. City of Oakland*, 96 F.3d 1204 (9th Cir. 1996).

Finally, the Defendant argued that any amendment would be futile because, in the Defendant's view, the amended complaint failed to adequately allege the existence of a municipal policy, custom, or practice. *See, e.g.*, *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004). This argument was persuasive, but it was also available to the Defendant when the original complaint was filed; the Defendant did not move to

2

dismiss the Plaintiff's original § 1981 claim, and the Court saw no reason why the Defendant should be permitted to make such a belated motion to dismiss.

Thus, given the liberal standard for amendment, as well as the lack of prejudice to the Defendant, the Court granted the Plaintiff's motion to amend.

    **2.    The Defendant's motion to preclude evidence of alleged violations of the Plaintiff's customers' equal protection rights**

The Defendant moved to preclude the Plaintiff from offering evidence that the Town of Tonawanda Police Department allegedly discriminated against the Plaintiff's customers, who were predominately black. In other words, the Defendant argued that the Plaintiff could not recover for violations of his customers' right to equal protection; rather, the Defendant argued, the Plaintiff could recover only if the Town of Tonawanda Police Department discriminated against the *Plaintiff* because of *his* race.

The Supreme Court has "adhered to the rule that a party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quotation marks omitted). But this rule is "not . . . absolute," *id.*, and the Court has recognized "that there may be circumstances where it is necessary to grant a third party standing to assert the rights of another." *Id.* at 129-30. The Court, however, has "not looked favorably upon third-party standing," *id.* at 130, and it has therefore "limited" the doctrine "by requiring that a party seeking third-party standing make two . . . showings." *Id.*

First, the party seeking to assert third-party standing must show that he has "a 'close' relationship with the person who possesses the right." *Id.* (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991). And second, the party must show that "there is a 'hindrance' to the possessor's ability to protect his own interests." *Id.*

3

The Court need not decide whether there was a "close" relationship between the Plaintiff and his customers because the Plaintiff has not asserted that "there is a 'hinderance'" to his customers' ability to protect their own right to equal protection. *Kowalski*, 543 U.S. at 130. The Supreme Court has suggested that a third-party is hindered from asserting his own rights when his "failure to assert a claim in his own right stems from disability, not disinterest." *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1689 (2017) (quotation marks omitted). Here, there is nothing to suggest that the Plaintiffs' customers' failure to assert their own rights stems from anything other than disinterest.

In response, the Plaintiff reframes the argument by relying heavily on the Supreme Court's decision in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). As relevant here, *Adickes* stated that "[f]ew principles of law are more firmly stitched into our constitutional fabric than the proposition that a State must not discriminate against a person because of his race or *the race of his companions*." *Id.* at 150-152 (emphasis added).

As the Court understands the Plaintiff's equal protection claim, he was not seeking to recover for violations of his customers' equal protection rights. Such a claim would undoubtedly be based on a theory of third-party standing, and it would almost certainly be without merit because, as discussed above, nothing suggests that the Plaintiff's customers' "failure to assert a claim in [their] own right stems from disability, not disinterest." *Morales-Santana*, 137 S. Ct. at 1689 (2017) (quotation marks omitted). Instead, the Plaintiff's claim is based entirely on his *own* right to equal protection. He alleges that that right was violated because he was "punish[ed] . . . for having social contacts with . . . black" customers or because he was "punish[ed] or discriminate[d]

4

against . . . for [his] willingness, past or present, to make contracts with black[] customers." *Scott v. Greenville Cnty.*, 716 F.2d 1409, 1415 (4th Cir. 1983). Put differently, the Plaintiff' argued that his own right to equal protection—the only right he sought to vindicate in this lawsuit—includes a right to associate, or enter into contracts with, customers of a different race. This argument is based on *Adickes*.[2]

Based on *Adickes*, the Court permitted the Plaintiff to introduce evidence that his customers were allegedly targeted because of their race as part of the *Plaintiff's* equal protection claim—not as part of the Plaintiff's *customers'* equal protection claims.

### 3. The Defendant's motion to preclude evidence of lost income

The Defendant moved to preclude evidence of the Plaintiff's lost income as a sanction for failing to disclose the evidence underlying that claim.

A party's initial disclosures must include, among other things, "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii). Rule 26(a)(1)(A)(iii) therefore "'imposes a burden of disclosure

---

[2] To be sure, several courts of appeals have interpreted *Adickes* to stand for the proposition that a business owner has *standing* to assert his customers' or tenants' constitutional claims. *See Scott*, 716 F.2d at 1415; *Des Vergnes v. Seekonk Water Dist.*, 601 F.2d 9, 17 (1st Cir. 1979). *See also Wilson v. City of N. Little Rock*, 801 F.2d 316, 321 n.2 (8th Cir. 1986) (not citing *Adickes*, but concluding that "[t]here is no question that [plaintiff] has standing to assert a claim bottomed on alleged racial discrimination suffered by his black clientele," and citing cases). It is unclear, however, how *Adickes* can be read to address a question of standing, because the issue in *Adickes* was *not* one of standing. *See United States v. Stoerr*, 695 F.3d 271, 277 n.5 (3d Cir. 2012) ("'A drive-by jurisdictional ruling,' in which jurisdiction 'has been assumed by the parties, and assumed without discussion by the court,' does not create binding precedent.") (editorial brackets and ellipsis omitted) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998)). Particularly in light of the Supreme Court's modern third-party standing doctrine, it is far from clear that *Adickes* stands for the proposition that a business owner has standing to assert the equal protection claims of his customers.

that includes the functional equivalent of a standing Request for Production under Rule 34.'" *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006) (quoting 1993 Advisory Committee Note to Rule 26(a)(1)(c)). These disclosures must be made "as best as the party is able at an early stage in the case," *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 159 (S.D.N.Y. 2012), and they must, of course, be supplemented as necessary during discovery. Fed. R. Civ. P. 26(e)(1)(A).

In this case, the Plaintiff's initial disclosures, which were dated April 8, 2016—over two years before trial began—stated that the Plaintiff "lost income from the closure of his business as a direct result of Defendant's actions at the end of 2013 in the amounts of $150,000 to $200,000 per year." Docket No. 25-2 ¶ 3.a. The Plaintiff's initial disclosures therefore calculated the Plaintiff's lost income to be "as much as $450,000 . . . to date." *Id.* On May 31, 2018—the day before jury selection—the Plaintiff provided his 2011, 2012, and 2013 income tax returns to the Defendant. The Plaintiff did not dispute the Defendant's claim at oral argument that the Defendant had not received the tax returns before that date. The Plaintiff also did not dispute that the copies of his 2011 and 2012 tax returns were incomplete and contained only the first page of Form 1040. Those pages show that the Plaintiff and his wife claimed wage and rental income, both from undisclosed sources.

The Plaintiff's disclosures did not comply with Rule 26(a)(1)(A)(iii). Although Rule 26(a)(1)(A)(iii) may not have required the Plaintiff to disclose his tax returns to the Defendant on the day he served his initial disclosures, the Rule surely required him to disclose his complete tax returns to the Defendant earlier than the day before jury selection. *See Design Strategy*, 469 F.3d at 295 ("[B]y its very terms, Rule 26(a) requires

more than providing—without explanation—undifferentiated financial statements; it requires a 'computation,' *supported by documents*") (emphasis added); *Rienzi & Sons, Inc. v. N. Puglisi & F. Industria Paste Alientari S.P.A.*, No. 08-CV-2540 (DLI)(JMA), 2011 WL 1239867, at *3 (E.D.N.Y. Mar. 30, 2011) (precluding evidence of supplemental claim of damages, in part, because defendant's "disclosure is . . . void of any evidentiary material on which the computation is based").  And even if the Rule does not require affirmative disclosure of the documents underlying a party's damages claim, nothing in the record suggests that the Plaintiff's tax returns were "ma[d]e available for inspection and copying," Fed. R. Civ. P. 26(a)(1)(A)(iii), until the day before jury selection.  In other words, they were not—as Rule 26 requires—made available "as best as the party is able at an early stage in the case," *Ritchie Risk-Linked Strategies*, 280 F.R.D. at 159.

The degree of the Plaintiff's non-compliance with Rule 26 is underscored by the fact that the Plaintiff was on notice of his incomplete disclosures by, at the latest, November 28, 2017, when the Defendant filed a motion to preclude evidence of lost income.  *See* Docket No. 25 at 9 ("Plaintiff provides only an estimate of the amount lost per year with no supporting evidence. . . .  [T]he plaintiff must produce evidence that 'provides an adequate basis for estimating the lost profits with reasonable certainty.'") (quoting *Process Controls Int'l v. Emerson Process Mgmt.*, 2012 U.S. Dist. LEXIS 151243 (E.D. Mo. Oct. 22, 2012)).  The Plaintiff, however, still did not disclose his tax returns until the day before jury selection, over six months later.  Under these circumstances, the Court has little difficulty in concluding that the Plaintiff's eve-of-trial disclosure did not comply with Rule 26(a)(1)(A)(iii).

A failure to comply with Rule 26(a)'s disclosure requirements means that the disclosing party "is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Noncompliance with Rule 26(a) and (e) is "substantially justified" when "there is justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request, or if there exists a genuine dispute concerning compliance." *Ritchie*, 280 F.R.D. at 159 (citations and quotation marks omitted). And "hamless[ness]" for purposes of Rules 26(a) or (e) "means an absence of prejudice to the defendant." *Id.* "The party that fails to comply with Rule 26(a) or (e) bears the burden of proving both that its non-compliance was substantially justified and that it was harmless." *Id.*

The Plaintiff did not meet his burden of showing that his tax returns should not be precluded. First, there is not a "genuine dispute concerning compliance." *Id.* To the contrary, there can be no dispute that the Plaintiff was required to make his *complete* tax available (at the latest) at a time when the Defendant could, if necessary, investigate the information in the returns.

And second, the Plaintiff's non-compliance with Rule 26(a) and (e) was not harmless. The Defendant received the Plaintiff's tax returns the day before jury selection, leaving the Defendant with no time to investigate the information in the returns. Compounding this prejudice is the fact that two of the returns were incomplete. This left the Defendant without any meaningful way of verifying the Plaintiff's claim that the income on his tax returns approximated the lost income from his restaurant. And there would have been reason to question that claim: The Plaintiff's tax returns suggest that his wage

8

income was far less than the lost income he claimed in his initial disclosures; the incomplete returns provided no basis to conclude that the Plaintiff's restaurant was the source (or at least the partial source) of his wage income; and the returns were jointly filed with the Plaintiff's wife, making it difficult for the Defendant to verify that the wage income claimed in the returns was, in fact, only the Plaintiff's wage income. Given the timing of these disclosures—well after the discovery cutoff date, and on the eve of trial—the Defendant was unable to investigate these issues. *See Rienzi & Sons*, 2011 WL 1239867, at *3 ("[A]lthough [defendant] has produced documents it believes in necessary [sic] to support its claim, [plaintiff] is entitled to investigate the claim in order to defend itself"). The resulting prejudice to the Defendant was obvious.

Although Rule 37's text requires preclusion as a sanction for non-compliance with Rule 26, district courts have "broad discretion to determine the nature of any sanction that should be imposed under Rule 37, based on all the facts of the case." *Ritchie*, 280 F.R.D. at 156 (quotation marks omitted). To decide what sanction is appropriate for a Rule 26 violation, courts consider several factors: "(1) the party's explanation for the failure to comply with the disclosure requirement]; (2) the importance of the . . . precluded [evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (quotation marks and brackets omitted).

Applying these factors in this case is straightforward. First, the Plaintiff offered no explanation for his failure to disclose his tax returns until the eve of trial, and he offered no explanation for his failure to disclose *complete* returns. Second, evidence of lost income was surely an important part of the Plaintiff's claim. Third, for the reasons stated

above, the Defendant was plainly prejudiced by the Plaintiff's late and incomplete disclosures. And fourth, the only apparent lesser sanction—adjourning trial and reopening discovery—was not warranted based on the history of this case. The parties failed to take advantage of their original discovery period, which was extended twice; the Court had little confidence that a third discovery period would be any more fruitful. And given the Court's crowded trial calendar, the earliest this case could have been rescheduled would, realistically, have been early-to-mid 2019.[3]

These factors collectively weigh in favor of preclusion. "Although the second . . . factor favors [the Plaintiff] because [the Plaintiff's] evidence of lost [income] was essential to proving [his] damages, all of the other factors weight heavily in favor of exclusion." *Design Strategy*, 469 F.3d at 296-97. The Plaintiff's eve-of-trial disclosure of incomplete tax returns put the Defendant in an unfairly difficult position, and it did so without any realistic way of remedying that prejudice.

The Court is mindful that preclusion was a severe sanction in this case. But, at bottom, "[t]he purpose of Rule 26 disclosures is to avoid surprise or trial by ambush." *Mikulec v. Town of Cheektowaga*, 302 F.R.D. 25, 29 (W.D.N.Y. 2014) (quotation marks omitted). Had the Court not precluded the Plaintiff's evidence of lost income, that is exactly what would have happened.

Finally, the Court denied the Plaintiff's motion for reconsideration (Docket No. 55), which argued that preclusion was unwarranted, in part, because the Defendant allegedly

---

[3] Even an adjourned trial date would not guarantee that trial would proceed on the rescheduled date. The Court adjourned an earlier trial date in this case because of a conflict with a criminal trial. The Court, of course, could offer no guarantee that the same thing would not happen again. In other words, because this case was scheduled for trial on a date when the Court's calendar guaranteed no conflicts, the Court did not seriously consider adjourning the trail.

failed to respond to any of the Plaintiff's discovery demands. As an initial matter, "[d]iscovery is not equity: one party's noncompliance with discovery requirements does not excuse the other's failure to comply. Each party's obligation is independent." *Gropper v. David Ellis Real Estate, L.P.*, No. 13 Civ.2068(ALC)(JCF), 2014 WL 518234, at *3 (S.D.N.Y. Feb. 10, 2014). In any event, the Court was not persuaded by this argument for several reasons. First, unlike a Rule 34 request, Rule 26 disclosures must be made "without awaiting a discovery request." Fed. R. Civ. P. 26(a)(1)(A). Second, the Plaintiff did not contest the Defendant's claim that the Plaintiff never moved to compel discovery. And third, the Defendant ultimately produced, without a court order, redacted documents that it had initially withheld from disclosure, and it did so several months before trial. *See* Docket No. 40-1 at 2.

### 4. The Defendant's motion regarding the police allegedly telling the Plaintiff's landlord about the Plaintiff's criminal nuisance charges

The Defendant next sought to preclude the Plaintiff from offering evidence that the Town of Tonawanda Police Department advised the Plaintiff's landlord of the criminal nuisance charges that had been filed against him.

The Plaintiff's § 1981 claim alleged that the Defendant violated his right to make or enforce a contract—in this case, a lease—with his landlord. Even if information about the Plaintiff's criminal nuisance charges was public, informing the Plaintiff's landlord of those charges surely made it "more . . . probable," Fed. R. Evid. 401(a), that the Defendant intended to ensure that the Plaintiff's lease was, in fact, terminated. Thus, this evidence was relevant, and it was admissible subject to any other objection the Defendant might have made at trial.

### 5. The Defendant's motion to preclude the Plaintiff from offering proof of officers' alleged warrantless entry

The Defendant moved to preclude the Plaintiff from offering evidence "of officers' entry on the premises of Ying's Wings and Things 'without a warrant.'" Docket No. 25 at 6. The Defendant argued that officers did not need a warrant to enter the Plaintiff's restaurant and that, as a result, "proof on this issue would serve only to extend the trial." *Id.* The Plaintiff responded that "the police officer's entry into [the Plaintiff's restaurant], whether they needed a warrant or not, is evidence that they were discriminating against Plaintiff and his customers, particularly if they did not enter the establishment on other occasions, or entered in larger numbers while these customers were present." Docket No. 41 at 6.

The Defendant's motion was granted because the risk of confusion from this evidence would have substantially outweighed its limited probative value. *See* Fed. R. Evid. 403. The Plaintiff did not bring a Fourth Amendment claim. Thus, evidence that officers engaged in "warrantless" entries would have had almost no probative value. Indeed, the Plaintiff's argument that warrantless entries were "evidence that [the police] were discriminating against Plaintiff and his customers," Docket No. 41 at 6, demonstrates that this evidence had, at best, a very tenuous connection to the issues in this case.

Moreover, as the briefing on this motion demonstrated, the parties strongly disagreed over whether a warrant was, in fact, required. *See* Docket No. 25 at 6 (Defendant's argument); Docket No. 41 at 6 (Plaintiff's argument). Thus, if the Court allowed the Plaintiff to argue that officers entered his restaurant without a warrant, the Defendant would, of course, be entitled to argue that the officers did not need a warrant. This would require the Court to either decide whether a warrant was required or instruct

the jury on Fourth Amendment law. Either option would have unnecessarily extended the trial and—more importantly, given the somewhat unfocused nature of the Plaintiff's equal protection claim—it would have confused the jury over what, exactly, the Plaintiff was claiming. Thus, the Court precluded the Plaintiff from offering this evidence under Rule of Evidence 403.

### 6. The parties' dispute over a claim of "malicious prosecution"

The Defendant moved to preclude the Plaintiff "from offering evidence in support of the claims of malicious prosecution" because he was ultimately convicted of criminal nuisance in the second degree. Docket No. 25 at 4-5.

The Plaintiff, however, did not bring a claim for malicious prosecution. Given the Plaintiff's claim in this case—that he was targeted because of his and his customers' race—and because the Plaintiff was only prosecuted for one of the five criminal nuisance tickets he received, the Court was given no reason why the Plaintiff could not argue the criminal nuisance charges were unfounded. But, at the same time, by making this argument, the Plaintiff opened the door to the Defendant introducing evidence that the Plaintiff was convicted of the fifth charge and that evidence from the first four charges was used at trial.

### 7. The Plaintiff's motion to exclude evidence of his restaurant's bankruptcy

Finally, the Plaintiff moved to preclude evidence that his restaurant filed for bankruptcy. The Plaintiff argued that such evidence would be irrelevant because it does "not make it more or less probable that [he] was discriminated against, nor does it help Defendant establish its burden of showing that Defendant would have taken the same action, even without the [alleged] racial animus." Docket No. 28-1 at 5. Finally, the

13

Plaintiff argued that evidence of his bankruptcy would "impermissibly taint the jury's perception of the Plaintiff and result in unfair prejudice." *Id.*

To prove both his § 1981 claim and his equal protection claim, the Plaintiff was required to prove that the Defendant's conduct was the "proximate cause of injuries sustained by the [P]laintiff." L. Sand, *et al.*, *Modern Federal Jury Instructions: Civil*, Instruct. 87-79 (Apr. 2016). Because the Plaintiff claimed that the Defendant's actions caused his restaurant to close, the Plaintiff's declaration of bankruptcy—which pre-dated the events at issue in the complaint—was unquestionably relevant to whether the Defendant's actions caused the damages the Plaintiff claimed. And whatever prejudice may have ensued from that evidence, it did not outweigh the evidence's probative value.

## CONCLUSION

The parties' outstanding motions *in limine* were resolved for the reasons stated above.

**SO ORDERED.**

Dated: July 2 , 2018       _s/Richard J. Arcara_____
    Buffalo, New York      HONORABLE RICHARD J. ARCARA
                                                         UNITED STATES DISTRICT JUDGE